UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WAYNE MICHAEL TERRIO                                    CIVIL ACTION

VERSUS                                                              NO. 22-924

PHILLIPS 66 COMPANY, ET AL.                     SECTION "R" (2)

## ORDER AND REASONS

Before the Court is defendants' re-urged partial motion to dismiss plaintiff's complaint for failure to state a claim.[1]  Plaintiff Wayne Michael Terrio opposes defendants' motion.[2]  For the foregoing reasons, the Court grants defendants' motion.

## I.    BACKGROUND

This case arises from discrimination that plaintiff allegedly experienced during the time he was employed by Phillips 66 Company ("Phillips 66").  Plaintiff worked for Phillips 66 at the Alliance Refinery in Belle Chasse, Louisiana, from 2006 until 2019.[3]  He was initially hired as an

---

[1]    R. Doc. 21.
[2]    R. Doc. 39.
[3]    R. Doc. 20 ¶ 1.

instrument technician in the maintenance department[4] and was eventually promoted to the role of lead instrument technician.[5]  Plaintiff contends that he was treated fairly and that his work environment was "generally supportive" until 2015, the year defendant Ann Janson became the human resources manager at Phillips 66.[6]  That same year, plaintiff allegedly began suffering from an autoimmune disease that caused inflammation of his major organs, low bone density, and frequent pain, weakness, and dizziness. Plaintiff asserts that once Janson learned of his disabilities, she began a "pattern of constant discrimination, harassment, and retaliation" that persisted for years and culminated in his termination in 2019.[7]

Plaintiff contends that he first requested medical leave in November 2015 under the Family Medical Leave Act (the "FMLA") due to his disabilities.  His request was denied on the grounds that he had not received a diagnosis from his doctor.[8]  He reapplied, and this time, he was approved to begin leave in January 2016.[9]

---

4    *Id.* ¶ 11.
5    *Id.* ¶ 14.
6    *Id.* ¶¶ 13, 15.
7    *Id.* ¶ 18.
8    *Id.* ¶ 19.
9    *Id.* ¶ 20.

Plaintiff alleges that later that year, he took vacation from Thanksgiving until New Year's Day.[10]   During his vacation, he was hospitalized, and when Janson learned of his hospitalization, she allegedly refused to permit plaintiff to return to work for nearly three months.[11] Although plaintiff had documentation from his physician indicating that he was able to return to work, Janson required plaintiff to submit more paperwork before he could return.[12]  When Janson permitted plaintiff to return to work in March of 2017, she told him that if he did not report to work by 7:00 a.m. the following day, she would "accept it as his resignation."[13]  He returned to work the next morning, at which point Janson wrote him up for exceeding his allotted FMLA leave for the year.[14]

In August of 2017, plaintiff allegedly received a verbal warning from HR based on his accumulation of more than 72 hours of absences in violation of the attendance policy, which was "largely premised" on his three-month absence that plaintiff contends Janson forced him to take.[15]  After he received the verbal warning, he filed a complaint with Phillips 66 regarding the

---

[10]     *Id.* ¶ 25.
[11]     *Id.* ¶¶ 25-27.
[12]     *Id.* ¶ 27.
[13]     *Id.* ¶ 30.
[14]     *Id.* ¶ 31.
[15]     *Id.* ¶ 32.

"unwarranted discipline."[16]   Thereafter, the verbal warning was removed from plaintiff's file.[17]   Plaintiff contends that Janson and her colleague retaliated against plaintiff for his complaint over a month later by changing plaintiff's previously approved "civic duty" absences that he took to attend his divorce proceedings to unapproved personal time.[18]   Janson then allegedly disciplined plaintiff for his unapproved personal time.[19]  Defendant does not describe the nature of the discipline Janson allegedly imposed.

In October of 2017, plaintiff requested intermittent FMLA leave for the six-month period from October 2017 to April 2018, which was approved.[20] On October 31, 2017, plaintiff allegedly complained to Janson about his FMLA time having been improperly recorded for his three-month absence earlier that year.  Janson allegedly determined that the write-up plaintiff received in March 2017 for his three-month absence was an "administrative error" that would be removed from plaintiff's file.[21]   Nevertheless, Janson allegedly told plaintiff that she was "extremely disappointed" that he

---

[16]    *Id.* ¶ 34.
[17]    *Id.* ¶ 33.
[18]    *Id.* ¶¶ 34-35.
[19]    *Id.* ¶ 36.
[20]    *Id.* ¶ 38.
[21]    *Id.* ¶ 39.

complained about the denial of his FMLA leave, and that if he was not "more respectful" in the future, "Alliance is not the ideal work location for [him]."[22]

Plaintiff contends that he was also mistreated by a supervisor named Lawrence Darville. On January 10, 2018, Darville refused to let plaintiff take his previously approved intermittent FMLA leave for a doctor's appointment because he gave too little notice for the time off.[23] Plaintiff informed Darville that this refusal violated the company's family and medical leave policy. Plaintiff alleges that Janson hired a private investigator to follow him in order to confirm whether he actually went to the doctor that day, which involved defendants sharing plaintiff's private medical information with the investigator in violation of the Americans with Disabilities Act.[24] Plaintiff contends that defendants did not hire investigators to follow other employees' work absences. Rather, he asserts that he was singled out because he used FMLA leave.[25]

Five days later, on January 15, 2018, plaintiff allegedly requested intermittent FMLA leave due to serious health conditions that he had recently started experiencing, which was granted.[26] Two weeks after he

---

[22]   *Id.* ¶ 40.
[23]   *Id.* ¶ 42.
[24]   *Id.* ¶¶ 44-49.
[25]   *Id.* ¶ 51.
[26]   *Id.* ¶ 53.

made his request for intermittent FMLA leave, Darville suspended plaintiff for five days without pay on the grounds that plaintiff posted an "antagonistic or inflammatory" picture in the instrument shop at work.[27]   Plaintiff contends this discipline was imposed in retaliation for his request for intermittent FMLA leave.  Plaintiff contends that he did not actually post the picture—rather, he left it in the printer—and that it was not offensive.[28]  He also alleges that other employees who posted objectively offensive pictures were not disciplined.[29]  Plaintiff further contends that on February 7, 2018, defendants withdrew their approval for his January 15, 2018 request on the grounds that they had not received requested paperwork.[30]  He filed a written complaint, in response to which defendants again granted his FMLA leave request.[31]

On February 22, 2018, plaintiff allegedly appealed Darville's denial of FMLA leave for the January 10, 2018 doctor's appointment, and that in retaliation for his appeal, Darville wrote plaintiff up based on his record of work absences.[32]  One of the work absences he was written up for was the

---

[27]   *Id.* ¶ 54.
[28]   *Id.* ¶ 55.
[29]   *Id.*
[30]   *Id.* ¶ 56.
[31]   *Id.* ¶¶ 57-58.
[32]   *Id.* ¶¶ 59-60.

three-month period that Janson refused to permit plaintiff to return to work from January 2017 to March 2017.[33]  Another was for his January 10, 2018 doctor's appointment, which Darville refused to let plaintiff use FMLA leave to attend.[34]  After plaintiff was written up, he allegedly stopped seeking FMLA leave because he "was too fearful that taking time off would result in Defendants hiring private detectives to follow him to sensitive and private doctor's visits, unwarranted write-ups, or even harsher discipline, and would threaten his job stability."[35]

Later in 2018, defendants and plaintiff's union representatives held a grievance meeting related to the incident in January of 2018 in which plaintiff was suspended for posting an offensive photo at work.[36]  As a result of the meeting, Human Resources agreed to reduce the discipline from a "Final Warning and Suspension" to just a written warning for the photo incident.[37]

Plaintiff was disciplined again in September of 2018 when he was written up and suspended for a week for driving through the wrong gate at

---

[33]    *Id.* ¶ 60.
[34]    *Id.*
[35]    *Id.* ¶ 61.
[36]    *Id.* ¶ 70.
[37]    *Id.* ¶ 72.

the edge of the refinery property that employees were not permitted to use.[38]
When he returned from suspension, Darville assigned plaintiff to "degrading
janitorial work and manual labor" that was not part of plaintiff's job
description.[39]  Plaintiff contends that none of his other coworkers who used
the wrong gate were penalized.[40]

Darville was transferred in January 2019, which "temporarily
improved" plaintiff's work environment.[41]  But in February 2020, conditions
at work worsened.  On February 7, 2020, plaintiff and one of his coworkers
parked in parking spots they were not authorized to use because the
employee parking spots were occupied by contractors' cars.[42]  He and his
coworker went to the parking lot during a break to see if they could move
their cars, but contractors were still parked in the employee parking spots.[43]
Plaintiff's coworker took photos of the contractors' cars parked in the
employee spots to document the issue.[44]   Plaintiff was subsequently
terminated for violating company policies by photographing "cars in the
parking lot . . . while on Company time," because he was not "authorized to

---

[38]     *Id.* ¶ 73.
[39]     *Id.* ¶ 74.
[40]     *Id.* ¶ 75.
[41]     *Id.* ¶ 76.
[42]     *Id.* ¶ 81.
[43]     *Id.* ¶ 83.
[44]     *Id.*

use a camera nor had any business reason" to take pictures.[45]  His coworker—who had also used FMLA leave—was also disciplined.[46]  After plaintiff was fired, he was replaced by a younger man who was not disabled.[47]

Finally, plaintiff contends that Phillips 66 had a pattern of pushing out older workers, and lists a number of workers over the age of forty with whom Janson was involved with firing.[48]  He also alleges that Janson fired one other Phillips 66 employee who was disabled and requested FMLA leave, but he does not provide details regarding the employee, his use of FMLA leave, or the circumstances of his termination.[49]

Plaintiff filed a complaint in which he brought six causes of action: (1) discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"), (2) discrimination and failure to accommodate in violation of Section 504 of the Rehabilitation Act of 193 (the "RA"), (3) retaliation in violation of Section 504 of the RA, (4) discrimination in violation of Title I of the Americans with Disabilities Act (the "ADA"), (5) retaliation in violation of Title I and Title V of the ADA, and (6) interference, restraint, denial, and

---

[45]   *Id.* ¶ 94.
[46]   *Id.*
[47]   *Id.* ¶ 96.
[48]   *Id.* ¶¶ 104-05.
[49]   *Id.* ¶ 106.

retaliation in violation of the FMLA.[50]   Defendants moved to partially dismiss plaintiff's complaint,[51] in response to which plaintiffs filed an amended complaint that includes more detail and alleges the same causes of action as the original complaint.[52]

Defendants filed a re-urged partial motion to dismiss plaintiff's complaint in which they contend that plaintiff's FMLA claim is untimely and meritless.  They contend that the same is true of plaintiff's other claims to the extent they are premised on unwarranted discipline plaintiff experienced before he was terminated. Because plaintiff's FMLA claim is the only claim plaintiff brought against Janson, defendants contend that Janson must be dismissed from this case.  Plaintiff opposes defendants' motion.

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft*

---

[50]    R. Doc. 1 ¶¶ 84-165.

[51]    R. Doc. 13.

[52]    R. Doc. 20 ¶¶ 111-167.  Plaintiff's amended complaint also omits allegations from his original complaint related to defendants' alleged failure to promote, which was the subject of defendants' original partial motion to dismiss.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'"  *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

While conducting this analysis, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network,*

*L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). "It is well-established that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir. 2013) (per curiam) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

## III.  DISCUSSION

### A.    Plaintiff's FMLA Claims

The FMLA entitles eligible employees to twelve work weeks of leave during any twelve-month period because of a serious health condition. 29 U.S.C. § 2612(a)(1). The FMLA provides that a covered employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA leave] right." 29 U.S.C. § 2615(a). The FMLA also "protects employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006). Plaintiff brings FMLA claims premised on (1) his termination from Philipps 66, which he contends was done in retaliation for his use of FMLA leave, and (2) defendants' earlier interference with and

denials of plaintiff's use of FMLA leave.  Defendants assert that both theories are time-barred.

### 1.      Retaliation under the FMLA

"The general statute of limitations for FMLA violations is two years, unless the cause of action alleges a willful violation, in which case the statute of limitations is three years."  *Mozingo v. Oil States Energy, Inc.*, 661 F. App'x 828, 830 (5th Cir. 2016) (citing 29 U.S.C. § 2617(c)).  The only alleged retaliatory conduct defendants took that falls within the outer bounds of the limitations periods applicable to FMLA claims was defendants' decision to terminate plaintiff in February 2020, which occurred more than two years but less than three years before plaintiff filed suit.    Accordingly, whether plaintiff's retaliation claim is timely depends on whether he plausibly alleged that defendants violated the FMLA willfully.  The FMLA does not define "willful."  *Id.*  "To determine whether conduct is willful, courts have looked to case law from other employment contexts."  *Id.*  The Fifth Circuit has "determined that to establish a willful violation of the FMLA, a plaintiff must show that his employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute."    *Id.* (internal quotation marks omitted).

13

Although plaintiff asserts in his complaint that defendants "willfully retaliated against [plaintiff] for requesting FMLA leave and for complaining about defendants' violations of his rights under the FMLA,"[53] plaintiff does not allege facts that render plausible his assertion that his termination was a willful violation of the FMLA. *Iqbal*, 556 U.S. at 679 ("Although for purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)); *see also Wright v. Arlington Indep. Sch. Dist.*, 834 F. App'x 897, 902 (5th Cir. 2020) (in the context of a Title VI claim, holding that a "complaint must plead facts to plausibly show that" defendant's alleged discrimination was intentional); *Wischnewsky v. Coastal Gulf Intern., Inc.*, No. 12-227, 2013 WL 1867119, at *5 (E.D. La. May 2, 2013) (assessing the adequacy of plaintiffs' factual allegations in support of their contention that defendants acted willfully); *Villegas-Rivas v. Odebrecht Constr., Inc.*, No. 18-1181, 2018 WL 4921922, at *4 (S.D. Tex. Oct. 10, 2018) ("[M]ere allegations that an employer acted willfully without any additional information are inadequate."); *Lushute v. Louisiana*, No. 10-252, 2011 WL 5979108, at *3 n.3 (M.D. La. Nov. 29, 2011) (applying two-year limitations period where

---

[53]     R. Doc. 20 ¶ 163.

plaintiff identified no facts in support of her allegation that defendant's FMLA violation was willful).

Plaintiff alleges that the reason he was given for his termination was his violation of the company's electronic communication and code of conduct policies.[54]  Plaintiff does not deny that he violated the company's policies. Rather, he argues that defendants used his violation of the company policies was a pretext to terminate him.  But plaintiff alleges no facts connecting his termination in February 2020 with his exercise of his rights under the FMLA, which, by his own account, ceased in February 2018, two years before he was fired.[55]  In his opposition to defendants' motion to dismiss, plaintiff points to allegations in his complaint regarding defendants' interference with his use of FMLA leave that occurred long before he was terminated.  Indeed, plaintiff's complaint makes clear that Darville was transferred in January 2019, over a year before plaintiff was terminated.[56]  And although plaintiff contends that Janson was involved in the decision to terminate him, Janson allegedly confronted him for complaining about her denial of his FMLA leave over two years before he was fired,[57] and the last time Janson allegedly

---

[54]  *Id.* ¶ 94.
[55]  *Id.* ¶ 61.
[56]  *Id.* ¶ 76.
[57]  *Id.* ¶ 40.

disciplined him was for driving through the wrong gate at work in September 2018,[58] roughly a year and a half before he was fired. Notably, the complaint also states that multiple other people were involved in the decision to terminate him for violating company policy—Janson did not unilaterally fire him. Rather, Janson, the Instrument Superintendent, plaintiff's direct supervisor, and another member of HR were all involved in plaintiff's termination.[59]

Further, plaintiff's complaint makes clear that in the period of time preceding his termination, defendants granted multiple of plaintiff's requests to use FMLA leave,[60] and Janson rectified Darville's earlier denial of FMLA leave for plaintiff's doctor's appointment by confirming that plaintiff's absence that day was approved as FMLA leave.[61] *See Raggs v. Miss. Power & Light Co.*, 28 F.3d 463, 471 (5th Cir. 2002) (holding that "[t]he [multi] year time lapse between" plaintiff's protected activity and his termination, "and the intervening positive evaluation by [his supervisor], undermine any causal connection between those two events").

---

[58]     *Id.* ¶ 73.

[59]     *Id.* ¶¶ 91, 94.

[60]     *Id.* ¶¶ 30, 58, 61.

[61]     *Id.* ¶ 64.

In light of the amount of time that elapsed between plaintiff's protected activity and his termination, and defendants' multiple instances of granting plaintiff FMLA leave, plaintiff's complaint falls short of plausibly alleging that defendants willfully violated the FMLA when they terminated him for violating company policies. *See Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 393 (5th Cir. 2005) (two-year limitations period applied to plaintiff's FMLA claim because "the history of problems between" plaintiff and his supervisor, and his supervisor's "strict enforcement" of company policy against plaintiff, did not establish willfulness). Plaintiff's claim for retaliation is thus untimely under the two-year limitations period applicable to non-willful violations of the FMLA.

### 2.   *Interference and Denial under the FMLA*

Plaintiff also brings a claim under the FMLA premised on defendants' earlier denials of and interference with his rights under the FMLA. Under § 2615(a)(1), an employer is prohibited from interfering with or restraining an employee from exercising, or attempting to exercise, their FMLA rights. The term "interference with" includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Bell v. Dallas Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011) (quoting 29 C.F.R. § 825.220(b)).

"With an interference claim, an employee must show that he was denied his entitlements under the FMLA, or that an employer did not respect the employee's FMLA entitlements." *Id.*

To the extent plaintiff's claim under the FMLA is premised on defendants' alleged interference with and denial of his FMLA leave, the claim is time-barred regardless of which limitations period applies. Plaintiff contends that after he was written up in February 2018, over four years before he filed suit, he stopped requesting FMLA leave for fear of retaliation.[62] His complaint makes clear that defendants took no affirmative steps to interfere with, deny, or discourage plaintiff from using FMLA leave within two (or three) years before he filed suit. The thrust of plaintiff's interference claim is that because defendants' violations of the FMLA that occurred outside of the limitations period caused him to feel fearful during the limitations period, defendants "discouraged" him from exercising his rights under the FMLA within the limitations period.

Plaintiff cites to no case that endorses this theory, and "§ 2617(c) is extremely clear in that the limitations period commences upon the 'last event constituting the alleged violation for which the action is brought.'" *Evans v. East Baton Rouge Parish Sch. Bd.*, No. 19-542, 2022 WL 698062, at *6 (M.D.

---

[62]    R. Doc. 20 ¶ 61.

La. Mar. 8, 2022) (quoting 29 U.S.C. § 2617(c)(1)).  Under plaintiff's theory, the "last event constituting the alleged violation" is his own continued sense of fear for years after defendants allegedly violated his rights under the FMLA.   Accepting plaintiff's position would require the Court to impermissibly adopt "a tolling rule that would hold the limitations period in abeyance indefinitely."  *Id.* (internal quotation marks omitted); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (holding, in a Title VII case, that the limitations period begins to run when the alleged discriminatory act occurs, "even though one of the effects [of the discriminatory act] . . . did not occur until later").

Plaintiff attempts to skirt the statute-of-limitations issue by contending that he alleged a "hostile work environment" claim, and that under such a theory, he can rely on incidents of violations that occurred beyond the limitations period in support of his claim.  But plaintiff does not identify, nor is this Court is aware of, any cases in which courts have recognized hostile work environment claims under the FMLA.   *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 842 (S.D. Tex. 2017) ("The Fifth Circuit has never recognized an independent claim for a hostile work environment in the FMLA context.").

To the extent plaintiff's FMLA claim is premised on interference with or denial of his FMLA leave, his claim is thus dismissed with prejudice as untimely.

### B.    Plaintiff's Other Claims

Plaintiff also brings claims under the ADA, the ADEA, and the RA. Defendants contend that to the extent plaintiff brings claims premised on unwarranted discipline before he was terminated under any of these statutes, such claims must be dismissed as untimely.[63]  Defendants contend that these claims are independently subject to dismissal because the pre-termination discipline plaintiff experienced did not rise to the level of an "adverse employment action."[64]  In his opposition to defendants' motion, plaintiff clarifies that he does not bring any standalone claims premised on unwarranted discipline; rather, he contends that his allegations of unwarranted discrimination bolster his claims related to his termination.[65] Plaintiff also contends that his allegations related to unwarranted discipline to which he was subjected support hostile work environment claims.[66]

---

[63]    R. Doc. 21-1 at 14-15.

[64]    *Id.* at 15.

[65]    R. Doc. 39 at 16.

[66]    *Id.* at 16-17.

Under the ADA and ADEA, in a deferral state like Louisiana, a plaintiff must file an Equal Employment Opportunity Commission ("EEOC") charge within 300 days of the alleged unlawful practice. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 384 (5th Cir. 2002) ("Under the ADEA, in a deferral state the limitations period for filing an age discrimination charge with the EEOC is effectively 300 days . . . [t]hus, a Texas employee's ADEA claims are normally time-barred if the employee fails to file an age discrimination charge with the EEOC within 300 days from the date of the unlawful employment practice."); *Windhauser v. Bd. of Supervisors for La. State Univ. & Agr. and Mech. Coll.*, 360 F. App'x 562, 566 (5th Cir. 2010) ("Because Louisiana is a deferral state, [plaintiff] had three hundred days from an alleged act of discrimination to file a charge with the EEOC."). Once the EEOC issues a right-to-sue letter, a plaintiff has 90 days to file suit. *See Julian v. City of Houston, Tex.*, 314 F.3d 721, 26 (5th Cir. 2002).

In this case, plaintiff filed his EEOC charge on November 18, 2020.[67] He received his right-to-sue letter on January 6, 2022, and filed this action within 90 days.[68] Defendant contends, and plaintiff does not dispute, that the only alleged misconduct that occurred within the 300-day period

---

[67]    R. Doc. 20 ¶ 8.
[68]    *Id.* ¶ 9.

preceding plaintiff's EEOC charge was his termination.  Accordingly, to the extent plaintiff seeks to bring freestanding ADA or ADEA claims premised on pre-termination unwarranted discipline, such claims are untimely.

Any freestanding claims under the RA premised on pre-termination discipline are likewise untimely.  The RA does not provide a limitations period.  *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011).  Courts thus apply the "most analogous period from state law," *id.*, which, under Louisiana law, is the one-year period for personal injury actions.  *Webster v. Bd. Of Supervisors for Univ. of La. System*, 2015 WL 4197589, at *5 (E.D. La. July 10, 2015) (holding that plaintiff's RA claim is time-barred under Louisiana's one-year limitations period).

Defendants' motion is thus granted to the extent plaintiff's complaint purports to allege freestanding claims premised on pre-termination unwarranted discipline under the ADEA, the ADA, or the ARA.


## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' partial motion to dismiss.  Plaintiff's FMLA claims are DISMISSED WITH PREJUDICE.  Because plaintiff's FMLA claim is the only claim brought against defendant Ann Janson, she is hereby DISMISSED from this action.

To the extent plaintiff seeks to assert freestanding claims for unwarranted discipline under the ADA, the ADEA, or the RA, such claims are likewise DISMISSED WITH PREJUDICE.  The Court further DISMISSES AS MOOT defendants' partial motion to dismiss plaintiff's original complaint.[69]


New Orleans, Louisiana, this ___30th___ day of March, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[69]   R. Doc. 13.